# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ERIC CHRISTOPHER MCCULLOUGH, | No. 1:16-cv-03097-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 15, 19 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 19. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 19).

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. *See* 42 U.S.C. § 1382c. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

Plaintiff protectively applied for Title XVI supplemental security income benefits on December 12, 2011, alleging an onset disability date of January 14, 2010. Tr. 174-81. The application was denied initially, Tr. 97-100, and on reconsideration, Tr. 105-13. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on October 30, 2014. Tr. 30-69. On February 17, 2015, the ALJ denied Plaintiff's claim. Tr. 13-24.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 12, 2011, the application date. Tr. 15. At step two, the ALJ found Plaintiff has the following severe impairments: depressive disorder; cannabis abuse; post traumatic stress disorder; and attention deficit hyperactivity disorder. Tr. 15. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 17. The ALJ then concluded that Plaintiff has the RFC to perform a full range of all exertional levels of work with the following nonexertional limitations:

unskilled repetitive routine work, no contact with the public, occasional contact with supervisors and co-workers, off task at work 10% of the time bust still able to meet minimum production requirements, and absent from work one time per month.

Tr. 18.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 22. At step five, after considering the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as hand packager and laundry worker. Tr. 23-24. Thus, the ALJ concluded Plaintiff has not been under a disability since December 12, 2011, the application date. Tr. 24.

On April 7, 2016, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1.  Whether the ALJ properly identified all of Plaintiff's severe impairments at step two;

2.     Whether the ALJ properly evaluated the medical opinion evidence; and

3.     Whether the ALJ's step five determination is supported by substantial evidence.

ECF No. 15 at 4.

## DISCUSSION

### A. Severe Impairments

Plaintiff contends that the ALJ improperly failed to identify Plaintiff's neurological impairments, specifically movement disorder, as a severe impairment at step two. ECF No. 15 at 7-8.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908 (2016).[1]

_____

[1] As of March 27, 2017, 20 C.F.R. § 416.908 was removed and reserved and 20 C.F.R. § 416.921 was revised to state the following:

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." S.S.R. 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(a) (2016);[2] S.S.R. 85-28.

> Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s). After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

[2] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

As of March 27, 2017, 20 C.F.R. §§ 416.921 and 416.922 were amended. Section 416.922(a) was revised to state the following:

The ALJ found that Plaintiff had the following severe impairments: depressive disorder, cannabis abuse, post traumatic stress disorder, and attention deficit hyperactivity disorder. Tr. 15. The ALJ found that Plaintiff has "complained of 'multiple neurologic symptoms' commonly referred to as a 'movement disorder,' but [the ALJ did] not find that the record establishes a severe physical impairment." Tr. 15.

First, the ALJ concluded that "the record is absent any objective medical signs and laboratory findings to establish a severe impairment based on these complaints." Tr. 16. As noted by the ALJ, Dr. Gilmore examined Plaintiff in June 2012, which resulted in normal findings. Tr. 16 (citing Tr. 291-93). For example, the exam showed no arm drift, his strength and fine movements were normal in the

(a) Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.

(b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

upper extremities.  Tr. 16 (citing Tr. 292).  Dr. Gilmore noted Plaintiff's

allegations of "multiple neurological symptoms," but concluded that the "objective

portions of the neurological exam are normal."  Tr. 292.  The ALJ further noted an

April 2014 examination by his primary care physician, Dr. Crank, showed normal

results.  Tr. 16 (citing Tr. 388 ("during exam no jerks, overall fairly [normal] exam

with no [facial] neuro defects")).  Similarly, the ALJ noted that Dr. Holmes, a

neurologist, examined Plaintiff in September 2014, which exam resulted in normal

findings.  Tr. 16 (citing Tr. 427).  Based on these findings the ALJ concluded that

"no clinician has established any objective medical signs or a definitive diagnosis."

Tr. 16.

Plaintiff challenges this finding, contending that Dr. Crank diagnosed

Plaintiff with "movement disorder," which was supported by Dr. Crank's notes

indicating he "observed jerks to the right side while [Plaintiff] was in the clinic,"

and "he was unable to heel walk and had a tremor located in the right and left

hands."  ECF No. 15 at 7-8.  In fact, as the ALJ noted, the record does not reflect

that a firm diagnosis was made by Dr. Clark.  In October 2014, Dr. Crank noted

that Plaintiff "is being worked up for seizures [versus] seizure like diagnosis with

upcoming video monitoring/EEG with neurologist."  Tr. 430.  Dr. Crank further

noted that there was no current treatment plan because he did not have a clear

diagnosis and Dr. Crank could not determine whether work would cause Plaintiff's

condition to deteriorate until there was a "firm diagnosis." Tr. 432. Moreover, in the report cited by Plaintiff, Dr. Crank noted that Plaintiff had not yet completed the follow up appointments necessary to get a clear diagnosis of movement disorder and stated that Dr. Crank would "place urgent referral to neurology at U of Washington for dx clarification." Tr. 386. Accordingly, the ALJ reasonably concluded that Plaintiff was not diagnosed with movement disorder and that an impairment was not established by objective medical signs and laboratory findings.

Second, although a severe impairment cannot be established by symptom complaints alone, the ALJ found that Plaintiff lacked credibility regarding his symptoms claims related to neurological impairments. Tr. 15-16. The ALJ noted that although Plaintiff claimed the symptoms began after a bad reaction to Wellbutrin, Plaintiff did not mention such dramatic symptoms when he took the medication or shortly thereafter. Tr. 15. Plaintiff was prescribed the medication in August 2011; at his next appointment in September, the notes simply indicate he "did not tolerate the medication." Tr. 16 (citing Tr. 284). The record reflects that Plaintiff did not present with complaints related to the side effects until June 2012, approximately nine months after he stopped taking the medication. Tr. 16 (citing Tr. 425). The ALJ noted that Plaintiff presented in the emergency room in the interim with a purported anxiety attack and did not mention the neurological episodes. Tr. 16 (citing Tr. 279-80). Moreover, the ALJ further noted that

Plaintiff presented at a medical provider in June 2012 requesting a note stating that he cannot work. Tr. 16 (citing Tr. 393). After a June 2012 evaluation by Dr. Gilmore, Dr. Gilmore ordered laboratory testing and Plaintiff failed to follow up with Dr. Gilmore. Tr. 16 (citing Tr. 291-93). Plaintiff did not seek treatment again until April of 2014. Tr. 16 (citing Tr. 390). The ALJ reasonably found that such a gap in the reporting and treatment undermines Plaintiff's credibility, particularly given the significant nature of the allegations. Tr. 16.

Furthermore, even if the ALJ should have determined that movement disorder is a severe impairment, any error would be harmless because the step was resolved in Plaintiff's favor. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Plaintiff makes no showing that the condition mentioned creates limitations not already accounted for in the RFC and or otherwise properly rejected by the ALJ.[3] *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining issue not argued with specificity may not be considered by the Court). Thus, the ALJ's step two finding is legally sufficient.

---

[3] Plaintiff contends that Plaintiff was unable to heel walk and had hand tremors. ECF No. 15 at 7-8. However, Plaintiff has made no effort to identify any limitation this poses on his work functioning.

**B. Medical Opinion Evidence**

Next, Plaintiff faults the ALJ for discounting the treating medical opinions of Jeramiah Crank, M.D., and Shane Anderson, Pharm. D. ECF No. 15 at 8-11.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Security*, 554 F.3d 1219, 1228 (9th

Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)).

The opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than that of an "other source." 20 C.F.R. § 416.927 (2016); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 416.913(d) (2016). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

### 1. Dr. Crank

Dr. Crank, Plaintiff's primary care physician, completed a medical report on October 29, 2014. Tr. 429-32. Dr. Crank opined that Plaintiff would miss four

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

days or more of work a month due to seizure activity.  Tr. 430, 432.  The ALJ

rejected Dr. Crank's opinion.  Tr. 16.  Because Dr. Crank's opinion was

contradicted by Dr. Toews, Tr. 294-98, the ALJ was required to provide specific

and legitimate reasons for rejecting the opinion.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ rejected Dr. Crank's limitation because he offered no

objective evidence to support such limitation.  Tr. 16.  The ALJ further noted that

Dr. Crank did not offer a diagnosis, but referred instead to Plaintiff's anticipated

neurological work-up.  Tr. 16-17.  Factors relevant to evaluating any medical

opinion include the amount of relevant evidence that supports the opinion, the

quality of the explanation provided in the opinion, and the consistency of the

medical opinion with the record as a whole.  20 C.F.R. § 416.927(c); *Lingenfelter

v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631

(9th Cir. 2007).  Here, the ALJ correctly noted that Dr. Crank did not identify or

provide any medical evidence to support his assertions.  Tr. 16.  In fact, Dr. Crank

specifically noted that no firm diagnosis, treatment, or prognosis could be given

until Plaintiff underwent testing, including an EEG and MRI.  Tr. 431.  Plaintiff

counters that Dr. Crank observed jerking on Plaintiff's right side while he was in

the clinic.  ECF No. 15 at 10 (citing Tr. 388).  Such observation is insufficient to

support the extreme limitation set forth in the opinion.  The lack of objective

medical evidence supporting the limitation is was a specific and legitimate reason to reject Dr. Crank's opinion.

Next, the ALJ rejected Dr. Crank's limitation because the limitation was based on Plaintiff's discredited subjective reports. Tr. 16. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Here, Plaintiff did not challenge the ALJ's finding that some of Plaintiff's "statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely credible…." Tr. 19; *see* ECF No. 15. Any challenge to that finding is waived. *Campbell v. Burt,* 141 F.3d 927, 931 (9th Cir. 1998) (holding that issues not raised before the district court are waived on appeal); *Hughes v. Astrue*, 357 F. App'x 864, 866 (9th Cir. 2009) (unpublished) (holding failure to challenge the ALJ's credibility finding in the district court waives any challenge to that finding on appeal).

Instead, Plaintiff contends that the ALJ failed to explain how he reached the conclusion that the opinion was based on Plaintiff's subjective complaints. ECF No. 15 at 10. Here, the ALJ noted that Dr. Crank offered no objective evidence to support the limitation, did not have a diagnosis, and was waiting for Plaintiff's future neurological work-up. Tr. 16-17. There is no documentation in the medical

record regarding the number of seizures Plaintiff suffered a month other than

Plaintiff's self-report. The ALJ's conclusion that Dr. Crank relied on Plaintiff's

self-reported symptom testimony is reasonable given the lack of medical evidence.

Reliance on a Plaintiff's discredited symptom testimony is a specific and legitimate

reason for the ALJ to discount Dr. Crank's opinion.

### 2. *Mr. Anderson*

Mr. Anderson completed a DSHS Documentation Request for Medical or

Disability Condition on October 14, 2013. Tr. 319-21. Mr. Anderson's report

indicated that Plaintiff suffers from depression and PTSD. Tr. 319. Mr.

Anderson's check form indicated that these conditions cause limitations on

Plaintiff's ability to concentrate for extended periods of time, interact with people,

use transportation, and follow a written employability plan. Tr. 319. In the section

requesting that the provider explain any specific limitations, Mr. Anderson

declined to provide an explanation. Tr. 319. Mr. Anderson opined that Plaintiff

should be limited to working only one to ten hours per week and further opined

that these limitations were not permanent, in that they should last three to six

months. Tr. 319-20. The ALJ gave minimal weight to the opinion. Tr. 22.

Because he has a doctorate in pharmacy, Mr. Anderson is not an acceptable

medical source under the regulations. 20 C.F.R. § 416.927(a)-(f). Thus, the ALJ

was required to cite germane reasons for rejecting the opinion.  *See Dodrill*, 12

F.3d at 919.

First, the ALJ rejected Mr. Anderson's opinion because as Plaintiff's

medication manager, Mr. Anderson performed no testing, cognitive or otherwise,

on Plaintiff.  Tr. 22.  Moreover, in the form, Mr. Anderson cited no objective

evidence to support these limitations and noted that no such evidence appeared in

Mr. Anderson's clinical notes.  Tr. 22.  As noted *supra*, factors relevant to

evaluating any medical opinion include the amount of relevant evidence that

supports the opinion, the quality of the explanation provided in the opinion, and the

consistency of the medical opinion with the record as a whole.  20 C.F.R. §

416.927(c); *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  A medical

opinion may be rejected by the ALJ if it contains inconsistencies or is unsupported.

*Bray*, 554 F.3d at 1228.  As the ALJ noted, Mr. Anderson performed no testing and

his clinical notes do not support the degree of limitations he assessed.  This was a

germane reason to reject his opinion.

Second, the ALJ rejected Mr. Anderson's opinion because it was

inconsistent with the mental status examination performed by Dr. Toews.  Tr. 22.

The consistency of a medical opinion with the record as a whole is a relevant factor

in evaluating a medical opinion.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at

631.  The ALJ referenced the findings of Dr. Toews, a psychologist who conducted

a clinical interview, mental status examination, reviewed the medical record and conducted a SIMS test, and opined that Plaintiff was capable of remembering detailed instructions and performing repetitive types of jobs. Tr. 22. The ALJ correctly noted that Plaintiff performed well on the mental status exam. Tr. 22 (citing Tr. 297-98). It is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600; *see also Sprague*, 812 F.2d at 1229-30. The ALJ reasonably relied on Dr. Toews' findings over Mr. Anderson's findings, particularly because Dr. Toews' findings are based on objective test results. This was a germane reason to reject the assessed limitations.

Third, the ALJ rejected Mr. Anderson's assessed limitations because they were based on the claimant's subjective reports. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. As noted *supra*, Plaintiff did not challenge the ALJ's credibility determination. Given the lack of testing, the lack of medical evidence cited, and the lack of supporting clinical notes, the ALJ reasonably concluded that Mr. Anderson's severe assessed limitations were based on Plaintiff's discredited self-report. This was another germane reason to reject Mr. Anderson's assessed limitations.

**C. Step Five Finding**

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

Plaintiff contends the ALJ's step five finding regarding Plaintiff's ability to perform work is not supported by substantial evidence because the testimony from the vocational expert was based on an improper hypothetical. ECF No. 15 at 11-12. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Martinez*, 807 F.2d at 773-74. Plaintiff's argument assumes the ALJ erred in evaluating the medical evidence. ECF No. 15 at 11-12. For reasons discussed *supra*, the ALJ's hypothetical to the vocational expert (VE) was based on the evidence and reasonably reflects Plaintiff's limitations. Thus, the ALJ's findings are supported by substantial evidence and are legally sufficient.

Finally, Plaintiff asserts that the ALJ's finding that Plaintiff can perform work that exists in significant numbers in the national economy is not supported by

substantial evidence.  ECF No. 15 at 12.  The Ninth Circuit authority is deferential "to an ALJ's supported finding that a particular number of jobs in the claimant's region was significant." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 527-28 (9th Cir. 2014) (citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (holding that a reviewing court must uphold the ALJ's decision if it is supported by "substantial evidence," which "is a highly deferential standard of review.")).  The Ninth Circuit has never set a "bright-line rule for what constitutes a 'significant number' of jobs." *Gutierrez*, 740 F.3d at 528 (finding 2,500 in the state of California significant and 25,000 nationally significant).

Here, the ALJ posed a hypothetical to the VE with Plaintiff's profile, to which the VE testified that there are at least two jobs that exist in the national economy, which would be reduced by approximately 75% to 90% given the specific limitations.  Tr. 61-68.  The resulting jobs and numbers that exist if reduced by 90% are as follows: hand packager (DOT 559.687-074), for which there are 480,000 jobs in the national economy, and 48,000 if reduced by 90%; and laundry worker (DOT 361.685-018), for which there are 215,000 in the national economy, and 21,500 if reduced by 90%.[4]  Citing no legal authority, Plaintiff

---

[4] The VE testified that as to the job of hand packager, 7,000 jobs exist in Washington state, Tr. 63, (700 if reduced by 90%), and as to the job of laundry

asserts the "jobs are so significantly eroded they do not exist in significant numbers in the national economy." ECF No. 15 at 12. Given the Ninth Circuit has previously found 25,000 in the national economy significant, the Court finds no error in the ALJ's finding that these two jobs, which when combined total 69,500 jobs (even if reduced by 90%), to be significant work. *See Gutierrez*, 740 F.3d at 528 (finding 25,000 national jobs significant).

Plaintiff's citation to *Eback v. Chater*, 94 F.3d 410 (8th Cir. 1996) is unpersuasive. In *Eback*, the VE testified his finding that significant jobs existed in the national economy relied on the assumption that employers would accommodate claimant's need to use a nebulizer under the Americans with Disabilities Act

worker, 3,000 exist in Washington state, Tr. 63, (300 if reduced by 90%). The Court finds that 1,000 jobs in Washington constitutes significant work. *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (upholding the ALJ's finding that 1,300 jobs in Oregon constituted significant work) (cited with approval in *Gutierrez*, 740 F.3d at 528); *Johnson v. Chater*, 108 F.3d 178, 180-81 (8th Cir. 1997) (upholding the ALJ's finding that 200 jobs in Iowa constituted significant work) (cited with approval in *Gutierrez*, 740 F.3d at 528); *Trimiar v. Sullivan*, 966 F.2d 1326, 1330-32 (10th Cir. 1992) (650 to 900 jobs in Oklahoma constituted significant work) (cited with approval in *Gutierrez*, 740 F.3d at 528).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23

(ADA). *Eback*, 94 F.3d at 412. The Court found the ALJ's reasoning faulty for several reasons, one of which was an assumption of ADA compliance. *Id*. Here, the VE did not rely on the assumption of employer ADA compliance.

The ALJ's step five finding is supported by substantial evidence.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 15) is **DENIED.**

2. Defendant's motion for summary judgment (ECF No. 19) is **GRANTED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE THE FILE.**

DATED June 29, 2017.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24